DANIEL FINCH *et al.*, Apellants, *v.* EMMA C. MARTIN *et al.*, Appellees.

APPEAL FROM MADISON.

A title acquired under an execution issued after the death of the defendant, is only *prima facie* void; it becomes so upon the proof of the fact of the death.
A bill is good which seeks to avoid titles which have no connection with each other, if both titles are united in the same hands.
Parties may be made to a bill under an averment that they claim, or pretend to have title to land; and if the charge in the bill is untrue, by disclaiming, they may obtain costs. Such parties, if improperly made defendants, should demur separately, and not join in a general demurrer.

ON the 26th day of January, A. D. 1857, complainants, Daniel Finch, Robert W. Finch, Thomas Walworth and Sarah Walworth his wife, Harriet King, Culvert Woodburn and John B. Woodburn, John Mason and Joel Mason, filed their bill in chancery, in the Circuit Court of Madison county, Illinois, setting forth that one Joel Finch, now deceased, being indebted to one William Martin, late of said Madison county, in the sum of $530.84, on the 18th day of September, 1843, had a settlement with said Martin, and executed to him his note for that amount,

8

payable thirty days from date, with interest at the rate of eight and a half per centum per annum; and also executed to said Martin another note of same date, upon the consideration hereinafter set forth, for $1,500, payable one year from date, with interest after six months, until paid; and, further to secure said notes, said Finch executed and delivered to said Martin a mortgage upon the following real estate in Madison county, Illinois, to wit: W. half SE. quarter Sec. 23; also, NW. quarter NE. quarter 26, T. 6 N., R. 10 W.

That said mortgage was duly recorded in recorder's office, Madison county; that at the time of the execution and delivery of said notes and mortgage, to wit: on 18th day of September, 1843, said Martin made, executed and delivered to said Finch an agreement under his hand and seal, in which, after setting forth the fact of the settlement and execution of said notes and mortgage, it was declared that the said sum of $530.84 was the sum really due to said Martin, at the date of said agreement, that being the amount of the first note; and that there was the sum of $153 credited to the said Finch, about the payment of which there was some uncertainty. It was provided that if it should be found that said $153 had not been paid, then said amount was to stand as a part of said $1,500. It was further provided, that whereas the said Joel Finch anticipates a suit to recover from him $1,000, which suit was to be defended by the said William Martin, and the fee for which was to form part of said $1,500 note; if said suit should not be commenced and defended, and should it be found, on further examination, that said $153 had been paid, then said mortgage was to be cancelled, upon the payment of the sum of $530.84, and the interest thereon; that although the date set forth in said mortgage is September 4th, 1843, yet the time that the notes and mortgages were executed and delivered, was the day set forth in said agreement, to wit: September 18th, 1843.

Bill charges that the suit referred to in said agreement, to recover from said Finch the sum of $1,000, was never commenced, nor was the same defended by said Martin; and further, that said $153, about the payment of which there was some uncertainty at the time of said settlement, had been paid to said Martin before the time of said settlement; and further, that afterwards the said note of $530.84, and interest thereon, was paid to said Martin; and that by the terms and intentions of said agreement the said Martin should have cancelled the said mortgage, the consideration of the said $1,500 note having wholly failed, and the said note of $530.84, and interest, having been duly paid and satisfied. Bill further charges that, after the death of said Finch, said Martin, regardless of said agree-

ment, and in fraud of the rights of the heirs, legal representatives and creditors of said Finch, on the 27th day of July, 1850, and nearly seven years after the execution of the mortgage aforesaid, filed in the Circuit Court of Madison county, Illinois, on the chancery side thereof, his bill to foreclose said mortgage against Mary Finch, widow and administratrix, and Timothy Turner, administrator of said Joel Finch, deceased, and against Daniel Finch, Robert W. Finch, Benjamin Starr Finch, Samuel C. King, and Harriet King his wife, John B. Woodburn and Clarissa Woodburn, Thomas Walworth and Sarah Walworth, John Mason and Joel Mason, his heirs at law, and against Edwin M. Hopping, the Alton Marine and Fire Insurance Company, Edward M. West, school commissioners of Madison county, and Joseph Nichols, as subsequent purchasers and judgment creditors; and that such proceedings were had at the March term, A. D. 1851; there being no defense made therein, a decree of foreclosure was rendered therein, and a commissioner was appointed to sell said real estate.

Bill further shows, that in the bill filed by said Martin, it was alleged that the said $1,500 note, with interest thereon, was due and unpaid, and said decree of foreclosure was for said $1,500 note, and interest, and no other, whereas, in fact and in truth, there was nothing due upon said mortgage, and the same should have been cancelled by the said Martin, according to his agreement of September 18th, 1843; that on the 23rd day of August, 1851, said real estate was sold by said commissioner to said William Martin, under said decree of foreclosure, the first tract for $1,900, the second tract for $200, making $2,100 in all, not being sufficient to satisfy said decree with costs. Bill charges, that at the time of the commencement of said foreclosure suits, complainants were entirely and wholly ignorant of the existence of the agreement of September 18th, 1843, referred to herein, which was only found out by them to be in existence very recently, and just before the commencement of this suit, so that they did not, nor could they, make any defense to the said proceedings, they supposing, from the relations existing between said Martin and Finch—the said Martin being the confidential friend and legal adviser of the said Finch up to the time of his death—that there was a good and valuable consideration for the said $1,500 note; and that said Martin would not commence suit against the heirs and legal representatives of his old client and friend, Joel Finch, without having a good and sufficient consideration as the foundation of a suit. Bill shows that said commissioner, on 26th day of March, 1853, made, executed and delivered to said Martin, a deed under the fraudulent proceedings aforesaid, for said real estate.

Bill further sets forth, that at October term, 1844, of the Circuit Court of Madison county, Illinois, one James L. Lamb recovered a judgment against said Joel Finch for $625.75 ;, and that afterwards, said judgment appearing not to be satisfied in full on the 31st day of July, 1848, and long after the decease of said Finch, the said Lamb caused a *pluries fi. fa.* to be issued out of the clerk's office of said Circuit Court of that date, directed to the sheriff of Madison county to execute, and the same was levied upon said W. half S. E. quarter, 23, T. 6 N., R. 10 W., and the same was afterwards, on the 9th day of September, A. D. 1848, struck off and sold to one Lewis B. Parsons, Jr., at and for the sum of five dollars, for whole of said tract ; and afterwards, on January 13th, 1851, a deed was executed to said Parsons, under said sale. Bill charges that the proceedings under said judgment were null and void ; and that said Parsons acquired no title thereunder, for the reasons : 1st, That at the time of the issuing of the execution, said Finch was dead, and notice was not given to his administrators of the intentions to have said execution issued three months preceding the issuing thereof. 2nd, That at the time of the sale the tract of land was of great value, to wit: of $5,000 ; and that at the sale it brought only five dollars, the same being susceptible of division, and should not have been struck off and sold in a body. 3rd, That at the time of the sale, it was supposed that the said mortgage given by Finch to Martin was *bona fide*, and in force as a lien against said property, and, for that reason, said real estate was struck off to said Parsons at a mere nominal sum.

Bill further sets forth, that said Parsons, on the 19th day of April, 1853, upon a pretended consideration of $4,000, made a deed for said W. half S. E. 23, T. 6 N., R. 10 W., together with another tract, to said William Martin, which is recorded in recorder's office of Madison county, Illinois, in book 47, at page 234, whereby said Martin acquired all the title of the said Parsons in said tract, if any he had, by virtue of said sale under said judgment, or otherwise. Bill further charges, that since the execution of said deed by said commissioners to said Martin, he has been in the possession of said premises described in said mortgage, receives the rents and profits arising therefrom ; and that since his death, his heirs and legal representatives have been, and now are, in the possession of the same, receiving the rents and profits thereof, which have amounted to a large sum, to wit : the sum of one thousand dollars per year. Bill further shows that the heirs and legal representatives of said Finch are correctly set forth in proceedings in said foreclosure suit, but that said Benjamin S. Finch has departed this life intestate, leaving as his heirs at law his brothers and sisters aforesaid,

and their children, who are the orators in this case; and, further, that Samuel C. King, husband of Harriet King, a daughter of said Joel Finch, has also departed this life; and that said Clarissa Woodburn has also departed this life intestate, leaving as her heirs at law her father, Culver Woodburn, and her brother, John Woodburn, and her sister, the said Harriet King.

Bill further shows that said Martin has departed this life, leaving a last will and testament, a copy of which is attached to said bill, leaving as his widow Emma C. Martin, who is, also, his executrix, and as his children Louise, intermarried with Leverett B. Sidney, Susan M. Martin, James W. Martin, William Martin and George Martin, to whom the said Martin devised his property, they being the only persons interested in the real estate left by the said William Martin, deceased. Bill further shows that George B. Ingersoll, William L. Jerome, executor of the last will and testament of Hail Mason, deceased, Benjamin J. Gilman, Henry W. Billings and Mary Finch, claim or pretend to claim an interest in the real estate described in said mortgage, but that the claims of all of said persons are in fraud of the rights of your orators in the premises, without foundation and null and void.

Bill prays that the proceedings under the foreclosure be esteemed and held for nought, and that no title be vested in William Martin thereunder; and, also, that the proceedings under the said judgment of James L. Lamb against said Joel Finch be declared null and void, and that no title vest thereunder in said Parsons or Martin who purchased from him; and that said defendants, Emma C. Martin, Louise Sidney, Leverett B. Sidney, Susan M. Martin, James W. Martin, William Martin and George Martin, be required, within an early day to be fixed, to enter upon the records a satisfaction of said mortgage according to said agreement; and that all the defendants and each of them be forever barred and precluded from setting up any claim to said real estate inconsistent with the rights of complainants therein; and that the title to same may be vested in complainants in the same situation it would have been if said mortgage had not been made, or proceedings taken, or claims made.

### AGREEMENT BETWEEN MARTIN AND FINCH.

"Whereas Joel Finch and the undersigned have this day had a settlement, and whereas the said Joel Finch has given me his note for five hundred and thirty dollars and eighty-four cents, due in thirty days from date, with interest at eight and a half per cent. per annum from date until paid; and whereas the said Joel Finch has also given me a note of fifteen hundred dollars, dated on the date of the day hereof, due in one year

from date, with interest, after six months, until paid, to secure which notes the said Finch has given me a mortgage on the W. ¼ of the S. E. ¼ of 23, in town. 6 N., R. 10 W.; also, on the N. W. ¼ of the N. E. ¼ of section No. 26, in the same town. and range: Now, it is hereby declared that the said sum of five hundred and thirty dollars and eighty-four cents is the sum that is really found due to the undersigned on the date thereof, that being the amount of the first note ; that there is the sum of one hundred and fifty-three dollars credited to Joel Finch, in settlement, about the payment of which there is some uncertainty ; if it shall be found that said one hundred and fifty-three dollars has not been paid, then said amount is to stand as a part of the fifteen hundred dollars; and, also, the said Finch anticipates a suit to recover from him a thousand dollars, which is to be defended by the undersigned, and the fee for which will form part of said fifteen hundred dollars; should said suit not be commenced and defended, and should it be found, on further examination, that said one hundred and fifty-three dollars has been paid, then said mortgage aforesaid is to be cancelled, upon the payment of the sum of five hundred and thirty dollars and eighty-four cents, and the interest thereon. Witness my hand and seal this the eighteenth day of September, A. D. 1843."

Defendants were duly brought into court by notice of publication and by service of process.

Afterwards, on the 12th day of May, 1857, an order was made and entered of record in the said Circuit Court, appointing a guardian *ad litem* for Susan M. Martin, James W. Martin, William Martin and George Martin, minor defendants, and ruling all of said defendants to plead, answer or demur by the first day of September next.

Afterwards, on the 15th day of May, 1857, the defendants by their solicitors filed in said case a special demurrer, assigning for causes of demurrer.: 1st, That the bill is exhibited for several distinct matters which are in their nature separate and distinct, and have no relation or dependence upon each other. Second, That complainants seek by their bill to set aside separate and distinct titles to certain lands in said bill contained, which can only be tried in a court of law.

Afterwards, on the 24th day of November, at the November special term of said court, 1857, SNYDER, Judge, presiding, an order was entered of record in said cause, sustaining the said demurrer filed by said defendants herein; to which decision sustaining said demurrer said complainants excepted, and prayed an appeal to the Supreme Court, which was allowed; and it

was agreed that said appeal might be taken to Springfield, without bond, and that appearance of defendants therein should be entered.

J. & D. GILLESPIE, for Appellants.

H. W. BILLINGS, for Appellees.

CATON, C. J. This bill is filed against the heirs and devisees of William Martin, deceased, for the purpose of setting aside the title to the premises in the bill mentioned, which they derived from William Martin. The bill further shows, that Martin derived apparent title to the premises from two distinct sources, or rather by two distinct modes, one of which was under a decree of foreclosure of a mortgage executed by Joel Finch, which mortgage was foreclosed after the death of Finch. It is admitted that the allegations of fraud contained in this bill, if true, are such as to require the court to set aside the title acquired under that decree.

The bill further shows that Martin claimed title to the same premises under a judgment obtained by one Lamb against Finch in his lifetime, but that the execution upon which the sale was made was not issued till after the death of Finch, and that no notice was served upon his representatives, as required by the statute, previous to the issuing of that execution, and that for that reason the title thus acquired was void. *Laflin* v. *Harrington*, 16 Ill. R. 301. It was not, however, void upon its face. *Prima facie* it was good. It could only be vitiated by the proof of an extraneous fact: that is, the death of Finch. This title could undoubtedly be declared void by a court of law. It is objected that this bill seeks to avoid both these titles having no connection with each other, in this one suit. To this there can be no objection. Both titles become united in the same hands. The complainants are compelled to come into a court of equity to get rid of one fraudulent title, under which the defendants claim to hold the land, and it is in perfect harmony with all of the well established principles of courts of equity, to grant the complainants complete relief, against the same parties and in reference to the same subject matter. They may take from the defendants all unjust claims which they may have against the property. They shall not be driven to seek a remedy in two different courts, when a court of equity has all the necessary parties before it, and can see what is right, and is able to do it. It is a cherished principle of a court of equity, that complete justice shall be done with as few suits as possible.

It is one of its oldest maxims, that it abhors a multiplicity of suits.

Five other parties are made defendants, with the general averment that they claim, or pretend to have some title or interest in the premises, which is fraudulent and void, etc. Averments like this have been sometimes called the fishing portions of a bill in equity, but they have always been upheld as indispensable to the repose of society, and to enable the court to grant the full measure of relief to which the party may be entitled. No one has a right to pretend to have a claim or title to another's estate, and refuse to disclose the nature of such title. No matter how baseless the claim may be, in a majority of cases it will deprive the property of half its value to the real owner. It becomes unsaleable in the market, and the real owner, not knowing but there may be something more in the pretended claim than he can discover, is deterred from making improvements whereby the public interests would be promoted. Such covert, insinuating, threatening claims of title to other people's estates, are the abhorrence of all quiet, honest men, and ever have been, and we trust ever will be, the detestation of a court of equity. These defendants were bound to answer, and disclose their title, if they had any ; and if they had none, it was their duty to disclaim title, when they would be entitled to costs, unless they had actually set up claims to title, which rendered it proper to make them parties, that they might be forever silenced.

But even if these last defendants were improperly made parties, or rather, if there is no equitable ground of relief shown against them, they should have demurred separately, and not joined in a general demurrer to the whole bill, with the other defendants, as to whom there is no question that the bill is abundantly sufficient.

The demurrer should have been overruled.

The decree of the Circuit Court must be reversed and the suit remanded, with leave to the defendants to answer to the merits.

*Decree reversed.*